UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN MICHAEL PORTER,
*o/b/o B.A.M.P. (minor child)*,

         Plaintiff,

  v.              **DECISION AND ORDER**
                    14-CV-547S
CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

         Defendant.

    1.  Plaintiff Brian Michael Porter challenges an Administrative Law Judge's ("ALJ") determination that his minor child, B.A.M.P., is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that B.A.M.P. has been disabled since May 1, 2009, due to attention deficit/hyperactivity disorder ("ADHD") and oppositional defiance disorder ("ODD"), and is therefore entitled to payment of Supplemental Security Income benefits ("SSI") under the Act.

    2.  Plaintiff applied for SSI benefits on B.A.M.P.'s behalf on February 15, 2011. The Commissioner of Social Security ("Commissioner") denied his application on August 5, 2011, and as a result, Plaintiff requested an administrative hearing. A hearing was then held on November 19, 2012, before ALJ David S. Lewandowski. The ALJ considered the case *de novo*, and on December 17, 2012, issued a decision denying Plaintiff's application. The Appeals Council denied Plaintiff's subsequent request for

review on May 15, 2014. Plaintiff filed the current civil action on July 8, 2014, challenging the Commissioner's final decision.[1]

3. On December 1, 2014, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9). On January 30, 2015, Defendant filed her own Motion for Judgment on the Pleadings. (Docket No. 11). For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[1] The ALJ's December 17, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  But while a reviewing court must employ "a very deferential standard of review," Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012), "[it] will not hesitate to remand for further findings or a clearer explanation" where it is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).

6.     On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard applicable to minors seeking SSI benefits.  See 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

7. Regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," i.e., an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). Under the regulations, functional limitations are evaluated in six broad areas or domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8. The Commissioner has established a three-step sequential evaluation process to determine whether a minor is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the minor must demonstrate that (1) he or she is not engaged in substantial gainful activity (i.e., he or she is not working); (2) he or she has a "severe" impairment or combination of impairments; and (3) his or her impairment or combination of impairments is of a listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924. A minor's medically-determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in a single domain. See 20 C.F.R. § 416.926a. A limitation is "marked" if it seriously interferes with a claimant's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is more than moderate, but less than extreme. See id.

9. Applying the sequential evaluation in the instant case, the ALJ made the following findings: (1) B.A.M.P. had not engaged in substantial gainful activity since

February 15, 2011, the date the application was filed (R. at 22);[2] (2) B.A.M.P. had ADHD and ODD, which constituted severe impairments under the Act (R. at 22); and (3) B.A.M.P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (R. at 22).  In addition, the ALJ evaluated B.A.M.P.'s mental impairments to determine if they were "functionally equivalent" to a listed impairment and concluded that they were not.  (R. at 22-31).  Based on the record, the ALJ ultimately determined that B.A.M.P. was not under a disability, as defined by the Act, since February 15, 2011, the date the application was filed, through the date of the decision.  (R. at 31).

10.     Plaintiff argues that the ALJ failed to (1) properly weigh the opinion of B.A.M.P.'s teacher; (2) properly weigh the opinions of B.A.M.P.'s nurse practitioner and social worker; and (3) properly assess Plaintiff's credibility.  Each argument will be discussed in turn.

11.     Plaintiff first argues that the ALJ failed to properly weigh the opinion of B.A.M.P.'s teacher, Kathleen Skarupinski-Anthon.  While it is undisputed that the ALJ considered Skarupinski-Anthon's statements (R. at 24), Plaintiff argues that the ALJ erred by failing to indicate the weight he afforded her opinion and how it factored into his determination of "less than marked" limitations in the domains of "Acquiring and Using Information, Interacting with Others, and Caring for Himself."

12.     The record is clear that the ALJ reviewed the questionnaire completed by Skarupinski-Anthon.  (R. at 24, Ex. 5E).  He evaluated the statements and findings within the questionnaire and noted that B.A.M.P. was reportedly overly critical of his own mistakes and needed adult supervision to complete tasks, but that he worked well

---

[2] Citations to the underlying administrative record are designated as "R."

5

with a daily consistent schedule and needed a consistent structure with individual help. The ALJ noted that "[i]mportantly," Skarupinski-Anthon reported that

> [B.A.M.P.'s] prescription medications had a good effect on his behaviors but that she was unsure if the claimant was compliant with his prescription regiment (Ex. 5E p. 6, 8). Moreover, while B.A.M.P. was reported to have a serious problem following rules (classroom, games, sports), respecting/obeying adults in authority, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting meanings of facial expressions, body language, hints, sarcasm and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation, focusing long enough to finish assigned activity or task, refocusing to task when necessary, completing work accurately without careless mistakes, working without distracting self or others, working at reasonable pace finishing on time, he reportedly only had mild problems making friends, carrying out simple step instructions and sustaining attention while playing sports (Ex. 5E, pp. 2-4). [B.A.M.P.'s] teacher also reported that [he] had no problems moving about and manipulating objects, caring for himself, or with his medical condition (Ex. 5E, p. 5). His teacher added that the claimant had no problems taking care of personal hygiene, caring for his physical needs (e.g., dressing, eating) but he had very serious problems handling frustration appropriately and being patient when necessary (Ex. 5E, p. 6).

(R. at 24).

Thus, while the ALJ may not have specifically indicated the weight he afforded Skarupinski-Anthon's opinion, it is apparent that he considered it. Piatt v. Colvin, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015) (citing SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)) (noting that where the court can glean the ALJ's reasoning, no specific finding concerning weight is required).

13. Skarupinski-Anthon's testimony is considered non-medical "other source" opinion testimony under 20 C.F.R. § 416.913(d)(2); SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006) ("Other source" evidence includes "[e]ducational personnel, such as school teachers . . ."). Information from "'other sources' cannot establish the existence of a medically determinable impairment," but rather, "there must be evidence from an 'acceptable medical source' for this purpose." SSR 06–03p at *2. But information from "other sources" may provide insight into the severity of an impairment and how it affects one's ability to function, particularly if based on special knowledge of the individual. See id. Additionally, SSR 06–03p provides that the ALJ must at least consider relevant medical evidence in the case record provided by "non-medical sources including . . . educational personnel, such as school teachers . . . ." Id. at *3.

14. Opinions from "non-medical sources" are evaluated using the applicable "Factors for Weighing Opinion Evidence" provided within the Social Security regulations, which include: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 416.927(c)).

While these factors explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," they can also be applied to "other source" opinions. SSR 03-03p at *4. Additionally, "[n]ot every factor for weighing opinion evidence will apply in every case. Each case must be adjudicated on its own merits based on a

consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p at *5.  Moreover,

> [f]or opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

Id.

Thus, the ALJ has full discretion to determine the appropriate weight to accord the opinion of an "other source" based on all the evidence before him. Banks v. Astrue, 955 F. Supp. 2d 178, 189 (W.D.N.Y. 2013) (citing Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995)).

15. "Although there is a distinction between what an [ALJ] must consider and what the [ALJ] must explain in the disability . . . decision, the [ALJ] generally should explain the weight given to opinions from these 'other sources,' *or* otherwise ensure that the discussion of the evidence allows a . . . reviewer to follow the [ALJ's] reasoning [when such opinions may have an effect on the outcome of the case]." Piatt, 80 F. Supp. 3d at 493 (citing SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)) (emphasis added).  When the evidence of record permits the reviewer to glean the rationale of an ALJ's decision, the ALJ is not required to comment on every piece of testimony presented to him, or to describe why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. Finney *ex rel.* B.R. v. Colvin, No. 13-CV-543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (citing

Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).  The court may look to other parts of the ALJ's decision and to other credible evidence to determine whether the ALJ's decision is supported by substantial evidence.  Id. (citing to Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982).

16. Here, the evidence in the record enables this Court to follow the ALJ's reasoning.  The ALJ stated in his decision that he gave Dr. Santarpia's acceptable medical source opinion "significant weight in [his] decision, which [was] consistent with the treatment records." (R. at 24-25).  Dr. Santarpia found that while B.A.M.P.'s evaluation appeared to be consistent with psychiatric problems, it did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.  (R. at 292).  Dr. Santarpia's medical source statement explained that

> [t]he claimant appears able to attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, adequately maintain appropriate social behavior, respond appropriately to changes in the environment, learn in accordance with cognitive functioning, ask questions and request assistance in an age-appropriate manner, interact adequately with peers and interact adequately with adults, all within normal limits.  Mild impairment is demonstrated in being aware of danger and taking needed precautions.  (R. at 292).

17. The ALJ also evaluated the opinions of acceptable medical source speech/language pathologist Ms. Atwater, who concluded that B.A.M.P.'s core language score demonstrated skills within functional limits.  (R. at 25).  Additionally, while Skarupinski-Anthon interacted with B.A.M.P. for ten months at the time the teacher questionnaire was submitted (R. at 145), which is more frequent than B.A.M.P.'s consultative exams with Dr. Santarpia in July 2011 (R. at 24) and Ms. Atwater in July 2011 (R. at 25), the ALJ's reasoning for according more weight to these

9

acceptable medical sources, while not explicitly stated in his decision, is consistent with the treatment records. Accordingly, because the ALJ's rationale can be gleaned from the record, this Court finds no reversible error in the ALJ's failure to explicitly state the weight he afforded Skarupinski-Anthon's opinion in his decision.[3]  See Finney *ex rel.* B.R., 2014 WL 3866452, at *7.

18.   Plaintiff next contends that the ALJ failed to properly weigh the testimony of B.A.M.P.'s nurse practitioner Page and social worker Fenn, who both issued medical source statements or reports indicating "extreme" limitations in two domains. This Court disagrees.

19.   The ALJ evaluated the intake examination conducted by Fenn, who diagnosed B.A.M.P. with ODD and ADHD. (R. at 25, Ex. 3F). Additionally, the ALJ examined the mental status examination done by Page,[4] which revealed

> a cooperative behavior, no psychomotor agitation or retardation, good eye contact, normal speech, normal rate, intact immediate and remote memory. Nurse practitioner [P]age also noted that [B.A.M.P.'s] concentration was fairly well[,] . . . thought process was organized and he had no racing thoughts or looseness of association[,] . . . [his] mood was euthymic and his affect was congruent (Ex. 14F, p. 4). Nurse practitioner Page reported that she would continue his

---

[3] Plaintiff also argues that the ALJ failed to explain how Skarupinski-Anthon's opinion was consistent with his finding of less than marked limitations in the functional domains. Specifically, Plaintiff argues that the ALJ only "sporadically and selectively" evaluated Skarupinski-Anthon's opinions within the domains. But an "ALJ is not required to mention every piece of evidence considered in making a decision." Conlin ex rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 388 (W.D.N.Y. 2015). Here, there is substantial evidence to support the ALJ's determination that B.A.M.P. has "less than marked" limitations in the functional domains, particularly the medical source testimony and records. For example, the ALJ relied on the report of school psychologist, Reginald J. Roberts, an acceptable medical source, and assessed B.A.M.P.'s IQ. See SSR 06–03p at *1 (school psychologists are acceptable medical sources); (R. at 24, 266-67). The ALJ also relied on the medical source opinions of licensed psychologist Susan Santarpia and speech/language pathologist Amy Atwater. Based on this evidence, it was reasonable for the ALJ to conclude that B.A.M.P. had "less than marked" limitations in various functional domains, and this Court finds that determination supported by substantial evidence. It simply was not necessary for the ALJ to specifically discuss Skarupinski-Anthon's opinion in the manner Plaintiff suggests.

[4] The ALJ mistakenly referred to Diane Page as Diane Stage in the record. (R. at 25).

> Concerta 27 mg and clonidine 0.1 mg and she would add Risperdal 0.25 mg which would assist with the behavioral, irritability and mood issues (Ex. 14F, p. 5).

(R. at 25).  The ALJ also considered Page's progress reports:

> In February 2012, [B.A.M.P.'s] father reported the prescription medications were helping in reducing [B.A.M.P.'s] disruptive behaviors (Ex. 14F, p. 15). A mental status examination conducted on the same day was normal (Ex. 14F, p. 15). Again in April and May, the mental status examinations remained normal (Ex. 14F, p. 17-19). [In August 2012, B.A.M.P.'s] father reported increasing disruptive symptoms but was "unsure" of [B.A.M.P.'s] medication intake (Ex. 14F, p. 23). [B.A.M.P.'s] Concerta and Risperdal dosage was increased (Ex. 14F, p. 23).

(R. at 25).

20. The ALJ evaluated Fenn's medical source statement wherein she reported that B.A.M.P.'s "disruptive behaviors caused extreme limitations interacting and relating with others and physical well-being; marked limitations acquiring and using information and moderate limitations attending and completing tasks and caring for self; and, no limitations moving about and manipulating objects." (R. at 25-26, Ex. 18F). The ALJ also noted that Page submitted a medical source statement providing the same functional limitations as Fenn before the hearing. (R. at 26, Ex. 19F).

21. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, prognosis, activities that can still be undertaken despite impairment, or physical or mental restrictions. See 20 C.F.R §§ 404.1508, 416.908; see also 20 C.F.R § 404.1527. It is well-settled that nurse practitioners and licensed social workers are not acceptable medical sources. See SSR 06-03p at *2 ("Medical sources who are not 'acceptable medical sources'" include

"nurse practitioners" . . . "licensed clinical social workers."). Accordingly, the ALJ properly construed this testimony as "other source" opinion testimony. (R. at 26).

22. Plaintiff identifies Fenn and Page as "treating other sources." (Pl.'s Mem. at 24). To the extent Plaintiff suggests that Fenn and Page's opinions are entitled to heightened consideration on this basis, he is incorrect. Only "acceptable medical sources" can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502, 404.1513, 416.902, that may be entitled to controlling weight. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Accordingly, the other source opinions of both Page and Fenn, respectively, "*may* be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." Genier v. Astrue, 298 Fed. App'x. 105, 108 (2d Cir. 2008) (emphasis added) (citing 20 C.F.R. § 416.913(d)(1)); see also SSR 06-03p at *2–3. Although the ALJ is "certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." Genier, 298 Fed. App'x. at 108.

23. It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Moreover, when evaluating opinion evidence, an ALJ examines the consistency of the testimony and "[g]enerally, the more

consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4).

24. In assigning little weight to the testimony of Page and Fenn, the ALJ evaluated the treatment notes and records, as well as Fenn's medical source statement from November 7, 2012, and Page's progress note of the same date. (R. at 25-26; Exs. 18F, 19F). The ALJ did not afford this testimony controlling weight, not because it was "other source" testimony, but rather, because the ALJ found the testimony of little evidentiary value. (R. at 26). In Gillies v. Astrue, upon which Plaintiff relies, the court found that the ALJ erred by failing to consider a nurse practitioner's observations and conclusions solely because it was "not necessarily considered to be [an] 'acceptable source[]' of medical evidence." No. 07-CV-0517, 2009 WL 1161500, at *6 (W.D.N.Y. Apr. 29, 2009). In contrast, here, the ALJ outlined his reasons for affording the testimony of Page and Fenn little evidentiary weight and explicitly provided a basis for his assessment that this testimony had no support, that being that their testimony contradicted their own respective treatment notes. (R. at 26; R. Ex. 14F); see also Canales v. Comm'r of Soc. Sec., No. 08–CV–5019, 2010 WL 1140861, at *8 (E.D.N.Y. Mar. 26, 2010) ("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision."). Additionally, the ALJ did not discredit the opinions, but rather gave them "little evidentiary weight." (R. at 26). Thus, there is no error.[5]

---

[5] Plaintiff also argues that the ALJ erred by not giving the opinions of Fenn and Page ample weight, because he implied that they were indicative of something "nefarious." In his decision, the ALJ noted that both Page's and Fenn's respective reports appeared to be almost identical and both appeared to be prepared for the disability hearing. (R. at 26). The ALJ is free to comment on the quality and credibility of the evidence in making his determination. In contrast to Plaintiff's cited cases that illustrate ALJs substituting their own opinions for those of medical providers, here, the ALJ did not go that far. This Court finds no error in the ALJ's assessment of the quality and credibility of this evidence. Additionally,

25. Plaintiff's final argument is that the ALJ improperly evaluated his credibility. At the hearing, Plaintiff testified that

> [B.A.M.P.] is violent and refuses to listen. He hits him and his other children. He cries and has temper tantrums. He has a hard time dealing with the stress at his mother's home. He does not get along with his mother's new boyfriend . . . [B.A.M.P.'s symptoms became increasingly worse. He is very smart . . . but does not want to do his homework. [B.A.M.P.] engages in biweekly counseling and sees a nurse practitioner for medication management once a month . . . [B.A.M.P.] is not always taking his prescription medications and his bad behavior escalates when he is not compliant with his medication regiment.

(R. at 23).

26. It is well-settled that "[a]n ALJ is not required to accept as credible a claimant's or parent's statements concerning the functional limitations of a minor child." Hariston *ex rel.* S.N. v. Comm'r of Social Sec., 52 F. Supp. 3d 657, 675 (S.D.N.Y. 2014); see Hickman–Smith *ex rel.* Watkins v. Astrue, No. 07 Civ. 3985(GBD)(RLE), 2011 WL 1226361, at *7 (S.D.N.Y. March 2, 2011) (citing Williams *ex rel.*, 859 F.2d at 260). An ALJ is free to accept or reject the testimony of a claimant's parent. See Williams *ex rel.* Williams, 859 F.2d at 260. However, "[a] finding that a witness is not credible . . . must be set forth with sufficient specificity to permit intelligible plenary review of the record. Id. (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983); see Williams *ex rel.* Williams, 859 F.2d at 260–61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled); see also Young v. Astrue, No. 7:05–CV–1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008)

---

this Court notes that the ALJ's credibility assessment of the evidence was not the only basis for affording this testimony little evidentiary weight.

(quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)) (noting that if an ALJ finds contentions not credible, he or she must state the reasons for the finding "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief").

27. "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." Williams ex rel. Williams,. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses."). "If the child claimant is unable to adequately describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 181 (N.D.N.Y. 2010) (citing Jefferson v. Barnhart, 64 Fed. App'x. 136, 140 (10th Cir. 2003)); see also SSR 96–7p, 1996 WL 374186, n. 2. "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Hickman ex rel. M.A.H., 728 F. Supp. 2d at 181.

28. The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce pain or symptoms alleged by the claimant. See 20 C.F.R. § 404.1529. "At the first step in the credibility analysis, plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." Hogan v. Astrue, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (emphasis in the original) (internal citations omitted); see also 20

C.F.R. § 404.1529(c) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account.")  "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis.  To require plaintiff to fully substantiate [his] symptoms would be both an abrogation of the regulations and against their stated purpose."  Hogan, 491 F. Supp. 2d at 353 (citing Castillo v. Apfel, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999).  Here, the ALJ properly found that B.A.M.P.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms.  (R. at 23).

       29.    Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.  Genier, 606 F.3d at 49 (internal quotations omitted) (citation omitted); see also Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence); see also SSR 96–7p, at *5 ("One strong indicator of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record.").  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.

Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).  Here, the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of B.A.M.P.'s symptoms were not credible to the extent that they were inconsistent with findings that B.A.M.P. does not have an impairment or combination of impairments that functionally equaled the listings.  (R. at 23).

30. According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if a claimant's contentions are not supported by objective medical evidence, the ALJ must then consider the following factors to make a credibility determination regarding the claimant's credibility:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Murphy v. Barnhart, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)).  "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F.

Supp. 2d at 651 (N.D.N.Y. 1999) (quoting <u>Gallardo v. Apfel</u>, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

31.   Here, the ALJ found that Plaintiff's testimony was not fully credible or consistent with the record considered as a whole. (R. at 23). This Court is satisfied that the ALJ applied the proper legal standards in his credibility analysis and there is substantial evidence to support the ALJ's determination that Plaintiff's statements concerning intensity, persistence, and limiting effects of the symptoms were not credible.

32.   Specifically, the ALJ discussed the requisite credibility factors by evaluating B.A.M.P.'s own testimony discussing daily activities, which included playing football and other sports and going to the gym, as well as spending time with friends (R. at 23). The ALJ also evaluated the frequency and intensity of symptoms, which included defiant and spiteful behaviors (R. at 25); aggravating factors, such as the presence of his mother's boyfriend (R. at 23, 25); the type, dosage, and effectiveness of medication, which included Concerta (27 mg), Risperdal (0.25 mg), and clonidine (0.1 mg) (R. at 25); treatment, which included B.A.M.P. and his father attending individual/family sessions at Child and Family Services (R. at 25); and any other measures outside of treatment employed to alleviate symptoms, which included placement in special education classes and support services (R. at 23-24).

33.   Plaintiff also contends that the ALJ's mistaken statement that "the claimant's father admitted, on questioning, that the claimant is not always taking prescription medicine" (R. at 23) was a mischaracterization of the testimony because Plaintiff testified that he gave B.A.M.P. his medication every morning. (P. Mem. at 28-

29, citing R. at 55). Plaintiff argues that the ALJ made a finding based on the misreading of this evidence and therefore, the ALJ did not comply with his obligation to consider all the relevant medical and other evidence.

34. Contrary to this argument, this Court finds that the record provides alternate support for the proposition that B.A.M.P. was not consistently taking his medication. For example, a school report states that B.A.M.P. was off his medication for days (R. at 289); B.A.M.P. did not take his medication on the date of his consultative examinations (R. at 413); and Fenn noted that B.A.M.P. received medication from his father, but did not receive medication from his mother, even though contact with his mother was not consistent. (R. at 413). Accordingly, this Court finds the alleged mischaracterization of this evidence harmless because other testimony clearly supports the ALJ's finding that B.A.M.P. did not consistently take his medication. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

35. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that B.A.M.P. was not disabled and Plaintiff's aforementioned contentions are unavailing.

36. This Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion for the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: March 19, 2016
       Buffalo, New York

                                                        /s/William M. Skretny
                                                        WILLIAM M. SKRETNY
                                                        United States District Judge